E-FILED
Friday, 07 May, 2021  03:07:27 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| STEVEN COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04096-SLD-JEH |
| | ) | |
| CITY OF GALESBURG, JAKE | ) | |
| MEDHURST, ALLISON BUCCALO, | ) | |
| JARED TAPSCOTT, and JACOB | ) | |
| THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court is Defendants Jake Medhurst, Allison Buccalo, Jared Tapscott, Jacob

Thompson (collectively, the "Officer Defendants"), and the City of Galesburg's (together with

the Officer Defendants, "Defendants") objection to United States Magistrate Judge Jonathan E.

Hawley's February 26, 2021 Order, ECF No. 47, granting Plaintiff Steven Coleman's Motion for

Leave to File First Amended Complaint Instanter, ECF No. 39.  Obj. Order Granting Mot. Leave

File First Am. Compl., ECF No. 49.  For the reasons stated below, Defendants' objection is

OVERRULED, Judge Hawley's order is AFFIRMED, and Coleman is ORDERED to file an

amended complaint containing a more definite statement of his Equal Protection claim within

fourteen days of the date of this Order.

**BACKGROUND**

This action arises from Coleman's June 19, 2018 arrest at the hands of the Officer

Defendants.[1]  On May 8, 2019, Coleman filed his complaint (the "Original Complaint"), which

---

[1] Judge Hawley's order thoroughly detailed Coleman's factual allegations.  Feb. 26, 2021 Order 1–3; *see generally*
First Am. Compl., ECF No. 48.

alleged claims under 42 U.S.C. § 1983 for unreasonable seizure (Count I), false arrest (Count II), excessive force (Counts III and IV), and unreasonable search of property (Count V), as well as state law claims for malicious prosecution (Count VI), respondeat superior (Count VII), and indemnification (Count IX[2]).  *See generally* Compl., ECF No. 1.  Defendants answered these claims a few months later, Answer & Affirmative Defenses, ECF No. 14.  On August 9, 2019, Judge Hawley issued a scheduling order, which gave the parties until November 29, 2019 to amend their pleadings.  *See* Aug. 9, 2019 Text Order; Disc. Plan, ECF No. 16.

Throughout much of the discovery process, the parties have grappled with the Officer Defendants' Facebook information.  In March 2020, they noted Coleman had requested data from the Officer Defendants' Facebook profiles.  Joint Mot. Continue Disc. Deadlines 2, ECF No. 28.  Several months later, some of the data became the subject of a discovery dispute, which Judge Hawley resolved after a round of briefing and two hearings.  Feb. 26, 2021 Order 4; Mot. Hearing Disc. Dispute 1, ECF No. 33.

Then, the data became the basis for Coleman's amended complaint (the "First Amended Complaint"), ECF No. 48.  On January 22, 2021—over a year after the deadline to amend the Original Complaint had expired—Coleman moved for leave to file the First Amended Complaint, which alleges (in addition to every claim alleged in the Original Complaint) a claim under 42 U.S.C. § 1983 for violation of his rights under the Equal Protection Clause of the Fourteenth Amendment and includes factual allegations in support thereof.  *See* First Am. Compl. ¶¶ 24, 29–31, 33–40, 96–104.  In his motion, Coleman reasoned even though the deadline to amend the Original Complaint had passed, he had good cause to do so because (1) he had only recently obtained from Defendants hundreds of the Officer Defendants' Facebook

---

[2] The Original Complaint does not include a "Count VIII."

posts, (2) those posts show "a pattern of racial hostility demonstrated by the [Officer] Defendants" that constitutes evidence in support of an Equal Protection claim (as well as his malicious prosecution claim), and (3) he "promptly moved to amend his complaint after first reviewing and digesting the Facebook discovery." *See* Mot. Leave File First Am. Compl. ¶¶ 3–6. Defendants argued the Facebook data constitute but "a small factor and do[] not provide good cause for failing to raise this [Equal Protection] claim earlier," as "[t]he Facebook posts do not contain any direct evidence of discrimination" and Coleman had or could have sought discovery of more salient evidence to support an Equal Protection claim before he filed the Original Complaint. *See* Resp. Mot. Leave File First Am. Compl. 9–11, ECF No. 42. They also contended Coleman's Equal Protection claim is futile because it is time-barred. *Id.* at 5.

Judge Hawley granted Coleman leave to amend. Feb. 26, 2021 Order 9. First, he found Coleman had good cause to amend the Original Complaint because he had no facts to support an Equal Protection claim when he filed it and was diligent in seeking, obtaining, and reviewing the Facebook posts once he became aware of them. *Id.* at 5–6. Second, Judge Hawley determined Coleman's claim is not futile, reasoning although Coleman's claim as based on his arrest falls outside the statute of limitations, it theoretically could be saved by the continuing violation doctrine. *Id.* at 8–9 ("The Court is therefore precluded from finding at this time that *any portion* of the Plaintiff's amended complaint is futile."). He also found to the extent Coleman's claim is based on the Galesburg Police Department's alleged failure to investigate the February 2019 robbery of Coleman's building, *see* First Am. Compl. ¶ 32, it is timely. Feb. 26, 2021 Order 8.

The First Amended Complaint was docketed on February 26, 2021. Defendants filed their objection on March 11, 2021, along with a memorandum of law, Mem. Supp. Obj. Order

Granting Mot. Leave File First Am. Compl., ECF No. 50.  Coleman responded a week later, Br.

Opp'n Obj. Order Granting Mot. Leave File First Am. Compl., ECF No. 52.

## DISCUSSION

### I.     Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 72(a), a party may object to a magistrate

judge's non-dispositive order within fourteen days of being served with a copy thereof.  A

motion to amend a pleading is a non-dispositive motion.  *Hall v. Norfolk S. Ry. Co.*, 469 F.3d

590, 595 (7th Cir. 2006).  "A party may not assign as error a defect in the order not timely

objected to."  Fed. R. Civ. P. 72(a).

"The district judge in the case must consider timely objections and modify or set aside

any part of the order that is clearly erroneous or is contrary to law."  *Id.*; *see also* 28 U.S.C.

§ 636(b)(1)(A)[3] ("A judge of the court may reconsider any pretrial matter under this

subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous

or contrary to law.").  In other words, "the district court can overturn the magistrate judge's

ruling only if the district court is left with the definite and firm conviction that a mistake has

been made."  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).  "This is

an extremely deferential standard and the district court may not reverse the magistrate judge's

decision simply because the district court judge would have come to a different conclusion."

*Doe v. Individual Members of the Ind. State Bd. of Law Examiners*, No. 1:09-cv-842-WTL-JMS,

2010 WL 106580, at *1 (S.D. Ind. Jan. 4, 2010) (citing *Pinkston v. Madry*, 440 F.3d 879, 888

(7th Cir. 2006)); *see also Snyder v. Moag & Co.*, Civil Action No. ELH-20-2705, 2021 WL

---

[3] "Rule 72(a), 'Nondispositive Matters,' tracks Section 636(b)(1)(A) . . . ."  *Cage v. Harper*, Case No. 17-cv-7621, 2020 WL 1248685, at *4 (N.D. Ill. Mar. 16, 2020) (explaining the relationship between Rule 72 and 28 U.S.C. § 636(b)(1)).

424412, at *5 (D. Md. Feb. 8, 2021) ("Put simply, an objection is not a vehicle to nit-pick the magistrate judge's ruling." (citation omitted)).

The way in which a party may object to a magistrate judge's ruling under Rule 72(a) is governed by local rules.  *See* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 3069 (3d ed.) (noting "Rule 72(a) . . . does not further mandate the manner in which objections are to be made").  Under the Local Rules, an appeal from a magistrate judge's non-dispositive order "must specifically designate the order appealed from and the basis for any objection" and "be accompanied by a memorandum of law in support." CDIL-LR 72.2(A).

## II.    Analysis

Normally, a motion for leave to amend is evaluated under Rule 15(a)(2).  But because Coleman moved after the deadline to amend the pleadings had expired, *see supra*, at 2, Judge Hawley had to "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied."  *See Alioto v. Town of Lisbon*, 651 F.3d 715, 718–19 (7th Cir. 2011); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  Judge Hawley correctly proceeded in this order.  *See* Feb. 26, 2021 Order 3–4.

### A.    Good Cause Under Rule 16(b)(4)

Rule 16(b)(4)'s good cause standard "primarily considers the diligence of the party seeking amendment."  *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quotation marks omitted).  As Judge Hawley explained, Coleman sought the Officer Defendants' Facebook posts at least as early as March 2020.[4]  Feb. 26, 2021 Order 4;

---

[4] Coleman asserts he made his first Facebook-related discovery requests on December 30, 2019.  Br. Opp'n Obj. Order Granting Mot. Leave File First Am. Compl. 6 (citation omitted).  However, all he cites in support of this

5

Joint Mot. Continue Disc. Deadlines 2.  Until he received them after the deadline to amend the Original Complaint had passed, he was not aware of their substance.  Feb. 26, 2021 Order 5; *see* Mot. Leave File First Am. Compl. ¶ 4; *see also* Br. Opp'n Obj. Order Granting Mot. Leave File First Am. Compl. 5.  Once he received them, he scoured them and concluded the Officer Defendants had demonstrated a pattern of racial animus that constitutes evidence in support of an Equal Protection claim.  *See* Feb. 26, 2021 Order 5; Mot. Leave File First Am. Compl. ¶ 5; *see also* Br. Opp'n Obj. Order Granting Mot. Leave File First Am. Compl. 6.  He then did not delay in seeking leave to file the First Amended Complaint, as he filed his motion for leave only days after Judge Hawley held a hearing on the aforementioned discovery dispute and *before* a protective order was entered thereon.  Feb. 26, 2021 Order 3–4; Jan. 12, 2021 Minute Entry; Joint Mot. Protective Order ¶¶ 1–2, ECF No. 40; Protective Order 2, ECF No. 41.

For Coleman, the Officer Defendants' Facebook posts altered the landscape of his case, providing him a basis to press a fresh cause of action while leaving the rest of his claims intact. His motion was a prompt response to changed circumstances and Judge Hawley did not commit clear error in finding Coleman had good cause to amend the Original Complaint.  *Cf. Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016) (affirming a grant of leave to amend after issuing a ruling that called some of the plaintiffs' claims into question, reasoning the amendment "was a prompt response to the altered landscape of the case").

Defendants disagree.  First, they contend Coleman did not have good cause to add his Equal Protection claim because the Officer Defendants' Facebook posts cannot prove it.  *See, e.g.*, Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 3–4 ("Coleman's Equal

_____

heretofore undisclosed fact is a certificate of service of discovery requests that does not disclose the information sought.  *See* Certificate of Service, ECF No. 25.

Protection claim is not about Facebook.  It is about discrimination leading up to and at the time of his arrest.  The Facebook posts do not contain any direct evidence of discrimination against Coleman . . . . [and] do not justify the delay in moving to amend the complaint.").  This argument is inapposite.  Whether Coleman's Facebook allegations can plausibly state an Equal Protection claim or whether the Facebook posts can prove one is irrelevant in determining whether Coleman had good cause under Rule 16(b)(4).  All that matters here is whether he was diligent in seeking amendment.  *See Trustmark*, 424 F.3d at 553 ("Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking amendment." (quotation marks omitted)).  If Defendants believe the Facebook allegations cannot plausibly state an Equal Protection claim, they can file a motion to dismiss; if they believe the Facebook posts cannot prove one, they can file a motion for summary judgment.

      More on-point is Defendants' second argument.  Defendants contend Coleman was not diligent in seeking leave to amend because regardless of the Officer Defendants' Facebook posts and the fact Coleman may not have had a factual basis for alleging an Equal Protection claim in the Original Complaint, Coleman should have been aware the Officer Defendants' actions may have been racially motivated when he filed it, he could have conducted an investigation, and he nevertheless chose not to.  *See* Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 2–3; *see also* Obj. Order Granting Mot. Leave File First Am. Compl. ¶¶ 16, 19.  Specifically, Defendants reason Coleman should have known race may have motivated the Officer Defendants' actions because he is "black and . . . the officers were white" and he "could have investigated the race and treatment of liquor license holders . . . to establish disparate treatment," Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 2, by "research[ing] their race and enforcement actions through FOIA [Freedom of Information Act]

7

requests, witness interviews, and other pre-suit investigation," Obj. Order Granting Mot. Leave File First Am. Compl. ¶ 16. In essence, Defendants' first argument is the Officer Defendants' Facebook posts are not sufficient and their second argument is they are not necessary. *See* Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 2 ("Defendants agree that Plaintiff must conduct an investigation and have a good faith basis for filing a claim, but doing so did not require unfettered access to the Defendants' Facebook accounts.").

As an initial matter, it is not clear whether Coleman's Equal Protection claim has anything to do with the enforcement actions brought against the bar he owned. *See infra*, at 13–16. But even if it does, Defendants' argument fails. The Court, like Judge Hawley, cannot agree that simply because Coleman is black and the Officer Defendants are white means Coleman should have been on notice there may have been discriminatory animus afoot. *See* Feb. 26, 2021 Order 5 (disagreeing with this premise and explaining "there must have been some other facts the Plaintiff had to believe that his race played a part in the actions the Defendants took against him"). While Defendants do not dispute Coleman did not have any such facts when he filed the Original Complaint, they argue "th[is] misses the point," as "Coleman *could have* obtained those facts" prior to the deadline for seeking leave. Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 3. However, they do not offer a single reason why Coleman *should have* investigated a possible pattern of disparate treatment other than his race. Indeed, that Coleman could have interviewed liquor license holders and submitted FOIA requests is irrelevant if he had no reason to. Diligence does not require parties to grasp at straws.

Even if Defendants' objection can be read to suggest Coleman should have sprung into action because he is black *and* his bar was singled out for "unfair and disproportionate enforcement," First Am. Compl. ¶ 23, their argument still falls short because Coleman had a

wholly separate reason to believe he was being targeted: his participation in the police investigation years earlier.  Compl. ¶¶ 12–27; Feb. 26, 2021 Order 5 ("[G]iven the allegations in the Plaintiff's original Complaint, the Plaintiff (and his attorney) believed that his participation in the [Illinois State Police] investigation was the impetus for the Defendants' complained-of-actions against him as the owner of a bar & grill and his building . . . .").  Indeed, Coleman's "initial conclusion was that because of his cooperation with the Illinois State Police investigation . . . he received disparate treatment in this incident many years later."  Br. Opp'n Obj. Order Granting Mot. Leave File First Am. Compl. 5–6.[5]

The Court shall not question Coleman's diligence because he chose not to launch an investigation based purely on conjecture.  Accordingly, Judge Hawley did not commit clear error in finding Coleman had good cause to seek leave to amend the Original Complaint.

## B.     Futility under Rule 15(a)(2)

Under Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires."  Yet, courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants,[6] or where the amendment would be futile."  *Gonzalez-Koeneke v. West*, 791 F.3d

---

[5] Coleman's opposition also notes he had a "hunch, but no solid evidence" the Officer Defendants "expressed racial animus towards minority groups" before he received their Facebook posts.  Br. Opp'n Obj. Order Granting Mot. Leave File First Am. Compl. 3.  This disclosure, on its surface, appears to implicate *Trustmark*, in which the Seventh Circuit found the district court did not abuse its discretion by denying a motion for leave to amend because the plaintiff conceded it "harbored suspicions" concerning the conduct it eventually complained of.  *See Trustmark.*, 424 F.3d at 553.  Ultimately, though, it is of no consequence.  First, since this was never before Judge Hawley, the Court cannot consider it for the first time on appeal.  *See, e.g.*, *Oleksy v. Gen. Elec. Co.*, No. 06 C 1245, 2013 WL 3944174, at *10 (N.D. Ill. July 31, 2013) ("When a district court reviews objections to a magistrate's decision on a nondispositive matter . . . it may not consider evidence that was not presented to the magistrate judge." (citations omitted)).  Second, the district court in *Trustmark* was presented with deposition testimony that revealed the plaintiff had these suspicions months before it filed its complaint.  *See Trustmark*, 424 F.3d at 553.  Since there is no such evidence here, *Trustmark* is distinguishable.

[6] In both their response to Coleman's motion for leave and their memorandum accompanying their objection, Defendants asserted they "are prejudiced" by the inclusion of Coleman's Equal Protection claim.  Resp. Mot. Leave File First Am. Compl. 11; Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl. 4–5.  However, both

801, 807 (7th Cir. 2015) (quotation marks omitted).  "A proposed amendment is futile to the

extent it is sought in order to assert time-barred claims."  *Williams v. City of Chicago*, Case No.

14 C 6959, 2017 WL 1545772, at *2 (N.D. Ill. Apr. 28, 2017) (citation omitted).

It is unclear whether Defendants have tried to object to Judge Hawley's conclusion that

no portion of the First Amended Complaint is futile.  Neither their objection nor their

accompanying memorandum of law mentions, let alone discusses, the statute of limitations-

based arguments they made before him.  The only glimmer of these arguments lies in

Defendants' attempt to incorporate the brief they filed before Judge Hawley into their objection.

*See* Obj. Order Granting Mot. Leave File First Am. Compl. ¶ 20 ("Defendants incorporate their

Response to Plaintiff's Motion for Leave to File First Amended Complaint [39] in further

support of this Objection.").

To the extent Defendants have attempted to object on statute of limitations grounds, their

attempt fails.  First, they failed to "specifically designate . . . the basis for [their] objection."  *See*

CDIL-LR 72.2(A).  For this rule (and in particular, the word "specifically") to have any

meaning, it must require parties to flesh out the substance of their arguments.  Defendants have

not done this.[7]

---

contentions were made while arguing Coleman did not have good cause to seek leave under Rule 16(b)(4).  Resp. Mot. Leave File First Am. Compl. 8–11; *see generally* Mem. Supp. Obj. Order Granting Mot. Leave File First Am. Compl.  The Rule 16(b)(4) inquiry focuses on "the diligence of the party seeking amendment," not on the prejudice to the party opposing it.  *See Trustmark*, 424 F.3d at 553 (quotation marks omitted).  These arguments are therefore out of place.

While prejudice is no doubt relevant when discussing Rule 15(a)(2), *see Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) ("[T]he degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." (quotation marks omitted)), Defendants made no attempt to link their prejudice argument to Rule 15(a)(2) in either of their briefs.  The Court, like Judge Hawley, will not consider it.

[7] That Defendants have thoroughly elucidated their Rule 16(b)(4) "good cause" arguments only further reinforces this point.

Second, the Seventh Circuit forbids argument-by-incorporation.  *See, e.g.*, *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 630 (7th Cir. 2003) (indicating incorporation by reference is not "a valid method of bringing facts and arguments to the attention of an appellate court" (citations omitted)); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring an appellant's brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").  Indeed, "[p]erfunctory or undeveloped arguments are waived" on appeal.  *See Estate of Moreland v Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (citations omitted).  While these decisions focus on circuit court procedure, a district court, when acting as an appellate tribunal, is "functionally analogous to an appellate court" and may adapt appellate rules to its proceedings.  *Cf. Park Hill Sch. Dist. v. Dass*, 655 F.3d 762, 768 (8th Cir. 2011) ("A district court reviewing an administrative agency decision on the administrative record is functionally analogous to an appellate court."); *Moss v. Astrue*, No. 09-1196, 2010 WL 2572040, at *6 (C.D. Ill. June 22, 2010) (finding arguments that were not supported by "specific examples or court cases" were "waived as perfunctory" (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).  The Court, like the Seventh Circuit, will not countenance undeveloped arguments made on appeal.

In any event, Judge Hawley's decisions on futility are not clearly erroneous.  Judge Hawley found Coleman's Equal Protection claim, as based on the Galesburg Police Department's alleged failure to investigate the February 2019 robbery, was not brought outside the statute of limitations.  Feb. 26, 2021 Order 8.  As the statute of limitations for Coleman's Equal Protection claim is two years and Coleman sought leave to amend in January 2021, Judge Hawley undoubtedly ruled correctly.  *See id.* at 6, 8; *Neita v. City of Chicago*, 830 F.3d 494, 498

11

(7th Cir. 2016) (detailing the statute of limitations for Section 1983 claims arising from injuries that occur in Illinois).

Perhaps more curious is Judge Hawley's decision regarding the event at the heart of Coleman's Equal Protection claim—his 2018 arrest. While he found this conception of Coleman's claim falls outside the statute of limitations, he nevertheless let it move forward because the continuing violation doctrine may sustain it.[8] Feb. 26, 2021 Order 8–9. But the parties never raised this doctrine; Judge Hawley did so sua sponte.

Nevertheless, the Court is not firmly convinced Judge Hawley acted errantly. *See Weeks*, 126 F.3d at 943 (reasoning "the district court can overturn the magistrate judge's ruling [on a non-dispositive matter] only if the district court is left with the definite and firm conviction that a mistake has been made"). As the Seventh Circuit has stated, "[w]hile district courts must be careful not to create the impression that they are taking an advocacy position on a particular issue, they are not required to ignore . . . applicable law." *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 677 (7th Cir. 2002). In the context of a statute of limitations inquiry concerning both timely and ostensibly time-barred acts, the continuing violation doctrine is certainly relevant.[9] *See id.* (finding the district court was allowed to raise an issue sua sponte, noting "the district court judge did not scour the record searching for a reason" to justify his decision). While the *Riverboat* court later explained the district court had to give the parties a "meaningful opportunity" to address the issue it raised sua sponte before making a decision on that basis, *Riverboat* is distinguishable because the decision was on a

---

[8] Because Judge Hawley's initial conclusion that Coleman's Equal Protection claim (as based on his 2018 arrest) "falls outside of the statute of limitations," Feb. 26, 2021 Order 8, was not the basis for his ultimate conclusion, the Court expresses no opinion thereon.

[9] "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992).

dispositive motion, a motion for summary judgment.  *See id.*  Not only was Coleman's motion

for leave not dispositive, *see Hall*, 469 F.3d at 595, but Defendants can still challenge his Equal

Protection claim on statute of limitations grounds.  Indeed, if Defendants believe they have a

legal basis to challenge the amended complaint, they can raise it at a later stage.

### C.      More Definite Statement Under Rule 12(e)

Underlying these proceedings is the vagueness of Coleman's Equal Protection claim; the

Court cannot discern the factual bases for it.  Indeed, the First Amended Complaint does not

identify the challenged conduct when setting it forth.  *See, e.g.*, First Am. Compl. ¶ 98

("Defendants' actions as alleged herein were motivated by racial animus . . . ."); *id.* ¶ 99 ("Prior

to and during the incidents, Defendants acted in such manners as alleged in this Complaint

without cause or justification because . . . ."); *id.* ¶ 100 ("Prior to, and after the events described

above . . . .").  Deciphering what the "actions," "incidents," or "events" are would be simple if

the First Amended Complaint only details one episode.  But it describes four: Coleman's firing,

*id.* ¶¶ 8–21, his bar being "singled out . . . for unfair and disproportionate enforcement," *id.* ¶¶

22–31, his arrest, *id.* ¶¶ 41–76, and the Galesburg Police Department's failure to investigate the

2019 robbery*, id.* ¶ 32.  In addition, the allegation regarding the failure to investigate does not

identify which Defendants failed to investigate.  *See id.* ("The Galesburg Police Department,

including *some* of these Defendant-Officers, have refused to thoroughly investigate the crime or

keep Plaintiff up to date on the investigation." (emphasis added)).

The Equal Protection claim appears to indicate Coleman only complains of the conduct

surrounding his arrest.  For example, it notes "persons of African American descent are more

frequently *taken into custody* than their equivalent percentage of the general population of

Galesburg," *id.* ¶ 98 (emphasis added), and only describes Coleman's compensatory damages as

"incurred medical expenses and attorney fees," *id.* ¶ 103.  While one allegation is devoted to his

bar's treatment, *see id.* ¶ 101, it is preceded by "[p]rior to, and after the events described above,"

which suggests it was inserted to provide background or evidentiary support, much like the

allegation regarding the Officer Defendants' Facebook posts*, see id.* ¶ 100 ("Prior to, and after

the events described above, the Defendants engaged in racist . . . social media posting . . . .").

Indeed, the allegations regarding Coleman's firing, his bar being picked on, and the Galesburg

Police Department's failure to investigate are contained in the "Introduction" section, while only

the allegations regarding his arrest are in the "Facts" section.

The parties and Judge Hawley seem to assume otherwise.  Coleman asserts his Equal

Protection claim is at least partly based on the bar's treatment.  *See, e.g.*, Br. Opp'n Obj. Order

Granting Mot. Leave File First Am. Compl. 1 (explaining he was subject to retaliation after he

opened his bar that "culminated to a point that forced Plaintiff to retain counsel and file a federal

lawsuit in an effort to bring this mistreatment to an end").  One could argue he also believes it is

based on the failure to investigate.  *See id.* at 5 ("Defendants fail to address the allegations in the

original complaint regarding the February 2019 incident in their objection.").  Defendants argue

the Equal Protection claim "relies primarily upon the disparate treatment of minority liquor

license holders" and do not mention the failure to investigate.  Resp. Mot. Leave File First Am.

Compl. 10; *see also* Obj. Order Granting Mot. Leave File First Am. Compl. ¶ 17 (asserting the

"key question" concerning the Equal Protection claim is "whether other liquor license holders

were treated differently").  Meanwhile, Judge Hawley found the claim is partly based on the

failure to investigate, *see* Feb. 26, 2021 Order 8, and appeared to find the claim also arises from

Coleman's bar being singled out, *see id.* at 5 (discussing the "complained-of actions against him

14

[Coleman] as the owner of a bar & grill and his building in Galesburg, Illinois that occurred at various times since 2016").[10]

To resolve this ambiguity, the Court orders Coleman to amend the First Amended Complaint to provide a more definite statement of his Equal Protection claim.  Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  The Court may order a more definite statement sua sponte as well.  *E.g.*, *Mitchell v. Elec. Beach Tanning Salon Ltd.*, Case No. 18 C 7475, 2019 WL 1077127, at *2 (N.D. Ill. Mar. 7, 2019) ("[A] court has the discretion to order a more definite statement *sua sponte* with appropriate notice and as needed." (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (other citations omitted)).  As the Seventh Circuit has noted, "the Rule 12(e) motion . . . is perhaps the best procedural tool available . . . to obtain the factual basis underlying a plaintiff's claim for relief."  *Reed v. Palmer*, 906 F.3d 540, 554 (7th Cir. 2018) (quotation marks and alteration omitted) (citing *Thomas v. Independence Township*, 463 F.3d 285, 301 (3d Cir. 2006)); *see also Bodnar v. John Hancock Funds, Inc.*, No. 2:06-CV-87 PS., 2008 WL 155019, at *11 (N.D. Ind. Jan. 15, 2008) (requiring the plaintiffs to submit a more definite statement that provides a "factual context" for their claims).  Rule 12(e) is also a great vehicle to determine which claims apply to which parties.  *See, e.g.*, *Collins v. Illinois*, No. 03-3159, 2006 WL 3627639, at *4 (C.D. Ill. Dec. 11, 2006) (granting a Rule 12(e) motion that asked for a statement to indicate "what claims the Plaintiff is bringing and which claims are brought against which Defendants").  In sum, "Rule 12(e), rather than a judicial demand for fact pleading, is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the

---

[10] Yet, Judge Hawley never referred to the allegations regarding the bar while discussing the statute of limitations issues.

court to handle the litigation effectively." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 849 (7th Cir. 2017) (citation omitted).

Accordingly, the Court orders Coleman to amend the First Amended Complaint to include a more definite statement of his Equal Protection claim.  The amended pleading must clearly identify which conduct gives rise to his Equal Protection claim.  It must also specify which Defendants his claim is brought against.  If Coleman identifies multiple acts that give rise to his Equal Protection claim, he must state each act in a separate count pursuant to Rule 10(b). *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."); *see also Bautista v. Los Angeles County*, 216 F.3d 839, 840–41 (9th Cir. 2000) (indicating separate counts have been required "where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendants' objection, ECF No. 49, to Judge Hawley's February 26, 2021 Order, ECF No. 47, granting Plaintiff Steven Coleman's Motion for Leave to File First Amended Complaint Instanter, ECF No. 39, is OVERRULED, Judge Hawley's order is AFFIRMED, and Coleman is ORDERED to file an amended complaint containing a more definite statement in the manner stated above within fourteen days of the date of this Order.


Entered this 7th day of May, 2021.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
